

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 11, 2022**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| VIPER PRODUCTS & SERVICES, LLC, | § § § | Case No.: 21-50187-rlj11V |
| Debtor. | § § § | |
| VIPER PRODUCTS & SERVICES, LLC, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Adversary No. 22-05003 |
| DIAMONDBACK E&P LLC, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

The Court addresses the motion of the defendant, Diamondback E&P LLC ("Diamondback"), requesting abstention and remand of this adversary proceeding back to state court in Midland County. The plaintiff and debtor here, Viper Products & Services, LLC ("Viper"), opposes the motion. For the reasons stated below, the Court grants Diamondback's motion.

1

## BACKGROUND

The plaintiff, Viper, sells oilfield equipment and provides maintenance and construction services to oil producers. The defendant, Diamondback, is an exploration and production company that operates oil and gas wells and related facilities in the Permian Basin of West Texas. On March 1, 2016, Diamondback and Viper entered into a master service contract ("Contract") whereby Viper agreed to provide Diamondback with certain goods and services for its oilfield operations.

Viper provided goods and services to Diamondback for several years without conflict. However, Diamondback contends that in 2021, it learned that Viper's president arranged hunting trips for Diamondback employees and their family members with the expectation that Viper would receive preferential treatment on Diamondback projects. Diamondback also contends that it then learned Viper performed services for Viper's president that were fraudulently billed as work performed for Diamondback. Since Diamondback believed such actions violated the Contract, on February 26, 2021, Diamondback notified Viper that it would conduct a contract-compliance audit, as allowed by the Contract's terms.

Once Diamondback notified Viper that it desired to conduct an audit, Diamondback refused to make payments to Viper on its outstanding invoices, which totaled approximately $764,000. Diamondback contends that the audit was necessary to determine which invoices were legitimately owed and which were fraudulent. Viper refused to allow Diamondback to conduct an audit. Instead, on April 29, 2021, Viper sued Diamondback in Lubbock County. Viper's state-court petition ("Petition") included claims for suit on sworn account, breach of contract, quantum meruit, promissory estoppel, and attorney's fees. Diamondback moved to

transfer venue to Midland County. In October 2021, the Lubbock court granted Diamondback's motion.

On December 13, 2021, Viper filed its bankruptcy here under chapter 11 of the Bankruptcy Code. Diamondback filed a proof of claim in Viper's bankruptcy case for unknown, unliquidated amounts owed by Viper for breach of contract, declaratory judgment, attorney's fees, and other related causes of action. On February 9, 2022, Viper filed a notice of removal to the bankruptcy court for the Western District of Texas, Midland Division, thereby removing the suit, labeled in bankruptcy as an adversary proceeding, to the bankruptcy court in Midland. On February 24, 2022, the Western District bankruptcy court transferred the action to this Court, which presides over Viper's bankruptcy. Viper consents to the Court issuing final orders and a judgment in the adversary proceeding; Diamondback does not so consent. Diamondback now moves the Court to abstain from presiding over the action and to remand it back to the state court in Midland.

## DISCUSSION

**I.      Standard for Permissive Abstention and Equitable Remand**

Under the "permissive abstention" doctrine of 28 U.S.C. § 1334(c)(1), "in the interest of justice, or in the interest of comity with State courts or respect for State law," federal courts have discretion to abstain from hearing matters related to a bankruptcy case and allow them to be heard in state court. § 1334(c)(1).[1] Under the "equitable remand" doctrine of § 1452(b), federal courts have discretion to remand matters related to a bankruptcy case to state court "on any equitable ground." § 1452(b). These two doctrines represent a congressional policy that, "absent countervailing circumstance, the trial of state law created issues and rights should be

---

[1] "Section" or "§" hereinafter refers to 28 U.S.C. unless otherwise stated.

3

allowed to proceed in state court, at least where there is no basis for federal jurisdiction independent of section 1334 and the litigation can be timely completed in state court." *Lee v. Miller*, 263 B.R. 757, 763 (S.D. Miss. 2001). Because the two doctrines share a similar purpose, the same factors related to permissive abstention also relate to equitable remand. *Callan v. Black Strata, LLC (In re MontCrest Energy, Inc.)*, No. 13-41129-DML-7, 2014 WL 6982643, at *7 (Bankr. N.D. Tex. Dec. 9, 2014).

> These factors include:
>
> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
> (2) the extent to which state law issues predominate over bankruptcy issues;
> (3) the difficult or unsettled nature of applicable law;
> (4) the presence of related proceeding commenced in state court or other nonbankruptcy proceeding;
> (5) the jurisdictional basis, if any, other than § 1334;
> (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case;
> (7) the substance rather than the form of an asserted core proceeding;
> (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
> (9) the burden on the bankruptcy court's docket;
> (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial;
> (12) the presence in the proceeding of nondebtor parties;
> (13) comity; and
> (14) the possibility of prejudice to other parties in the action.

*McVey v. Johnson (In re SBMC Healthcare, LLC)*, 519 B.R. 172, 190 (Bankr. S.D. Tex. 2014) (alteration in original), *aff'd*, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017). No single factor is dispositive, and the Court's determination does not turn on tallying the factors on each side. *Id*. at 192. Furthermore, the Court may, in its discretion, give greater weight to certain factors. *Id*.

## II. Factors in Favor of Abstention and/or Remand

### a. State-Law Issues Predominate (Factors 2, 13)

The notion of comity embodies "a proper respect for state functions" and a "belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris*, 401 U.S. 37, 44 (1971). "In the judicial context, comity requires federal respect for state courts' competency to conduct proceedings and enter judgments." *KSJ Dev. Co. of La. v. Lambert*, 223 B.R. 677, 680 (E.D. La. 1998). Abstention and remand uphold comity considerations by respecting the adjudicatory competency of state courts. This is especially so where issues of state law predominate, as abstention and remand demonstrate a recognition of the superior capacity of state courts to decide issues of state law.

The action was filed in state court by Viper before Viper filed bankruptcy. Viper's claims include suit on sworn account, breach of contract, quantum meruit, promissory estoppel, and attorney's fees—all state-law causes of action. Viper says it intends to amend the Petition to include a claim for turnover under the Bankruptcy Code but has not done so yet. Diamondback's proof of claim, which will likely be brought into the action, includes claims for breach of contract, declaratory judgment, and attorney's fees—also state-law causes of action. Therefore, *all* claims in this action are based exclusively on state law. The predominance of state-law issues, coupled with comity considerations, favors abstention or remand to state court.

### b. Most of the Claims in the Action are Non-Core (Factors 7, 8)

#### 1. Viper's Claims

"A 'core proceeding' is one that invokes a substantive right provided by the Bankruptcy Code or is a proceeding that by its nature could arise only in the context of a bankruptcy case."

5

*First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.)*, 713 F.3d 285, 293 (5th Cir. 2013) (cleaned up) (quoting *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir.1992)). Under § 157(b)(2), Congress created a non-exhaustive list of matters that constitute core proceedings. But even a matter that technically falls within the list of § 157 by name may nonetheless fail to constitute a core proceeding when the matter "is made of 'the stuff of the traditional actions at common law.'" *Stern v. Marshall*, 564 U.S. 462, 484 (2011) (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)).

None of Viper's claims asserted in the Petition are core matters. None fall under the list of core proceedings in § 157, all arise under state common law, and none arise from the context of a bankruptcy case—the Petition was filed well before Viper filed for bankruptcy. Viper says that it intends to amend the Petition to assert a turnover action under the Bankruptcy Code, which is a core proceeding under § 157(b)(2)(E). But Viper has not amended the Petition to assert a turnover action, and it would be premature to give much weight to the mere possibility that it will assert such an action in the future.

Furthermore, even if Viper had already pleaded its purported turnover action, that claim would not be core. Viper claims that, of the 349 unpaid invoices, 76 have never been identified as "disputed" by Diamondback. Viper says that the invoices not labeled "disputed" are therefore mature debt obligations and it will assert a turnover action to compel payment on these debts.

"Core proceedings include … orders to turn over property of the estate." § 157 (b)(2)(E). Courts in this district have long held, however, that even if labeled a "turnover action," a claim to collect prepetition accounts receivable is not a core proceeding "[u]nless there is no question remaining as to the liability of the defendant to the estate." *Satelco, Inc. v. N. Am. Publishers, Inc. (In re Satelco, Inc.)*, 58 B.R. 781, 786 (Bankr. N.D. Tex. 1986); *see also Fang Operators,*

*Inc. v. Carpenter (In re Fang Operators, Inc.)*, 158 B.R. 643, 645 (Bankr. N.D. Tex. 1993). "A turnover action under 11 U.S.C. § 542(b) cannot be tacked onto a complaint so as to confer authority in the bankruptcy court to adjudicate an otherwise non-core claim." *Highland Cap. Mgmt. L.P. v. Highland Cap. Mgmt. Servs., Inc. (In re Highland Cap. Mgmt. L.P.)*, No. 19-34054-SGJ-11, 2021 WL 7541482, at *4 (Bankr. N.D. Tex. July 14, 2021).[2]

Viper claims that its purported turnover action is core because it only seeks to recover payment for invoices that were not labeled "disputed" by Diamondback, which Viper contends are undisputed, mature debts. But just because Diamondback did not label certain invoices "disputed" does not mean it admitted it was required to turn over payment for those invoices. Diamondback has asserted that, under the Contract, it is entitled to refrain from making payments on all the outstanding invoices until an audit has been completed to determine liability and until any liens that Viper's Contract violations caused to be placed on the funds are satisfied. Diamondback's obligation to turn over payment for all the invoices is still in dispute, and a turnover action to recover those funds would accordingly be non-core.

2. **Diamondback's Claims**

Diamondback's proof of claim, as stated above, includes claims for breach of contract, declaratory judgment, and attorney's fees. Diamondback admits that its claims constitute counterclaims against Viper that are technically core matters under § 157(b)(2)(B), as they concern the "allowance or disallowance of claims against the estate." § 157(b)(2)(B); *see also Beneficial Nat'l Bank USA v. Best Receptions Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 944 (Bankr. E.D. Tenn. 1998) ("where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those

---

[2] *report and recommendation adopted*, No. 3:21-CV-1378-N, 2021 WL 7540340 (N.D. Tex. July 26, 2021), *reconsideration denied*, No. 3:21-CV-1378-N, 2021 WL 7540296 (N.D. Tex. Dec. 7, 2021).

encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B)."). Diamondback says that the core nature of these matters should not be given much weight, however, because the audit may reveal that Diamondback is not entitled to counterclaims, in which case Diamondback will withdraw them. The Court gives little credence to Diamondback's contention that it *may* remove its core counterclaims.

The Court gives little weight to the characterization of Diamondback's claims as core for another reason. For abstention/remand purposes, the Court analyzes "the *substance* rather than the *form* of an asserted core proceeding." *In re SBMC Healthcare, LLC,* 519 B.R. at 190 (emphasis added). While the *form* of Diamondback's claims is core, as they exist under a proof of claim that Diamondback filed in the bankruptcy case, the *substance* of the claims is non-core—all claims arise under state common law. Furthermore, while the Court retains jurisdiction for enforcement of claims in a bankruptcy case, "[w]here a claim asserted against an estate involves legal issues in which state law predominates, a claim can be litigated in state court to the point of judgment, with enforcement of the judgment stayed until further order of the bankruptcy court." *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 426 (Bankr. S.D. Tex. 1987). For these reasons, the mere characterization of Diamondback's claims as core does not, on balance, favor denial of abstention or remand. The substance of all of Viper's and Diamondback's state-law claims favors abstention or remand.

### c. The Only Jurisdictional Basis for the Action to be in Federal Court is § 1334 (Factor 5)

Viper's notice of removal relied exclusively on § 1334, which states that federal courts have jurisdiction over actions "related to" bankruptcy cases. Diversity jurisdiction under § 1332 does not apply because both Viper and Diamondback are citizens of Texas. And federal-

question jurisdiction under § 1331 does not apply because none of the pleaded claims are based on federal law. The Court has jurisdiction of the action exclusively through § 1334, which weighs in favor of abstention or remand.

### III. Factors Against Abstention/Remand

#### a. Successful Prosecution of the Action by Viper Would Bring $764,000 Into the Bankruptcy Estate (Factors 1, 6)

Viper seeks to recover from Diamondback approximately $764,000. If Viper succeeds on its prosecution of the action, that amount would come into the bankruptcy estate. Such a large sum would undoubtedly improve the administration of the bankruptcy estate; indeed, Viper says recovery of the funds is "central to Viper's bankruptcy case and its ability to successfully reorganize." Adversary No. 22-05003, ECF No. 22 at 7. Furthermore, the action is closely related to the bankruptcy case—Viper asserts it was driven into bankruptcy in large part because Viper relied on timely payments from Diamondback to cover its obligations. Viper was no longer able to do so after Diamondback refused to pay.

When the motion for abstention and/or remand was heard, Viper intended to seek confirmation of a chapter 11 plan of reorganization. Since then, however, Viper has informed the Court on the record that it intends to seek either confirmation of a chapter 11 liquidation plan or conversion to chapter 7. Case No. 21-50187, ECF No. 143, *Hearing on Motion to Sell Property*. The effect that this action may have on the administration of the bankruptcy estate is thus minimized. While a successful prosecution of the action by Viper may result in significantly more funds available to creditors, it will not assist Viper's reorganization efforts, as Viper initially asserted. The Court affords this factor little weight.

### b. No Right to a Jury Trial Exists (Factor 11)

Both Diamondback and Viper have waived their rights to a jury trial under the Contract. Thus, whether the Court may preside over the action is not dependent on the parties consenting to a jury trial, and this factor weighs against abstention or remand.

### IV. Neutral Factors

The rest of the factors of the abstention/remand analysis do not weigh for or against abstention or remand. Diamondback alleges that Viper's resistance to the action's adjudication in Midland state court is evidence of forum shopping, which weighs in favor of abstention or remand. "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." *Kravitz v. Apollo Glob. Mgmt., LLC (In re AOG Ent., Inc.)*, No. 16-11090 (SMB), 2019 WL 1054921, at *10 (Bankr. S.D.N.Y. Mar. 5, 2019) (quoting *Riviera Trading Corp. v. Oakley, Inc.*, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996)). As explained, the action is related to Viper's bankruptcy, which is presided over by this Court. Viper's desire for the suit to be adjudicated by this Court is not evidence of forum shopping.

Diamondback argues that, based on its pre-petition investigations, it may need to join other parties into the action, which favors abstention or remand. But as the Court will not give much weight to the mere possibility of Viper bringing a core claim, so the Court will not give much weight to Diamondback's claim that it *may* join other parties.

Diamondback urges that adjudication of the action in this Court would prejudice Diamondback, as Diamondback and its witnesses will have to incur significant costs in travelling to Lubbock from Midland, where most of Diamondback's employees reside. But Viper's

employees and counsel reside in Lubbock; so, based on Diamondback's theory, travel to Midland would likewise prejudice Viper. The risk of prejudice is therefore neutral in this case.

While not a factor typically analyzed under the abstention/remand analysis, Diamondback also asserts that Viper's notice of removal to the Midland bankruptcy court was defective because Viper failed to attach all pleadings and motions filed in state court. According to Diamondback, Viper failed to attach several letters that were filed in the state court. All major pleadings were attached, and Viper's failure to attach letters is not such a significant defect as to weigh in favor of abstention and/or remand. Furthermore, if Diamondback is concerned with the propriety of the removal procedure, Diamondback may file a motion directly attacking the validity of removal in this case.

The following factors additionally do not weigh for or against abstention or remand: the state-law issues in this case are not particularly difficult or unsettled; there is no related proceeding in state court; and abstention or removal would not significantly burden the Court's docket.

## V. Conclusion

The only factors that weigh against abstention or remand here are the jury-trial waiver and the effect that a successful prosecution of the action will have on Viper's bankruptcy. That there is no jury trial in this case does not weigh heavily against remand, as both this Court and the Midland state court may preside over the matter. That Viper may recover $764,000 from the action would have been a critical factor favoring abstention or remand were Viper going forward under a reorganization plan. In a liquidation, however, the outcome of the action will have minimal effect on the *administration* of the bankruptcy case; it will only affect the total payout to creditors. The factors against remand or abstention are not compelling.

On the other hand, this case consists entirely of claims based on state law that are non-core in substance, which weighs heavily in favor of abstention or remand.  State courts are best suited to handle issues of state law, and abstention or remand demonstrates respect for comity and the adjudicatory capacity of state courts.  And with no issues of bankruptcy or other federal law at play, there are no claims that would be more appropriately heard by this Court.  The only basis for federal jurisdiction is based on related-to jurisdiction, which also bolsters the case for abstention or remand.

From a weighing of the factors as described, the Court concludes that abstention and remand are appropriate.  Diamondback's motion is granted; the Court will abstain from adjudicating the action and will remand it to the Midland state court under §§ 1334(c)(1) and 1452(b).  The parties will be instructed to file a report with the Court of any final judgment, order, or other disposition issued in the state court.  The Court will issue an order.

### End of Memorandum Opinion ###